SAMUEL LINDSEY, Appellant, *v.* MOSES L. EDMISTON *et al.*, Appellees.

### APPEAL FROM EDGAR.

A secret partner is, when discovered, liable for the debts of the concern. And if he is present and participates in a transaction, it may be inferred that he is interested.

THIS is an action of assumpsit, brought by Lindsey against Edmiston and Kramer to recover some eight hundred dollars for hogs, sold and delivered to the defendants, by the plaintiff. The declaration contains the common counts in assumpsit.

The defendant plead the general issue sworn to by Edmiston.

The proof agreed upon by the parties and embodied in the bill of exceptions, shows that the defendant, Edmiston, resided in Paris, Edgar county, Illinois; that the defendant, Kramer, resided in Richmond, Indiana, a distance of about one hundred and fifty miles; that in the summer and fall of 1857, Edmiston was extensively engaged in dealing in cattle and hogs, and corn to feed the same; that during that season he bought and sold nearly twenty-five thousand dollars worth of stock which he shipped to New York and other points; that he had a certain stock lot north of the town of Paris, about one mile distant from the railroad depot; that as he would receive cattle and hogs from persons in the country, they would be driven into this lot and assorted for shipment, and fed until shipped. It was also proved that Edmiston and one Nichols were in some way connected with some hog contracts that year.

It was also shown in evidence, that McWhinny & Co., of Richmond, Indiana, had a contract with the defendant that season for a large number of hogs; that Edmiston bought the hogs of the plaintiff, without disclosing that any other person was interested in said purchase; that on the 23rd day of November, 1857, the plaintiff brought his hogs to Paris, Illinois; that Kramer, Edmiston and one McWhinny were there on that day, and receiving and weighing; that Kramer met Lindsey's hogs about half a mile from town and helped him drive them in; that as the hogs were weighed and driven into the shipping pen, near by, that Edmiston, being furnished with the weights, settled with the plaintiff and gave his note, (which was admitted in evidence to show the amount due, by consent); that at the time of receiving said hogs, either Edmiston or McWhinny said they were the last on their contract; nothing was said at this time about Kramer and Edmiston being partners. It is admitted, that on the 12th day of January, 1858, Edmiston failed, and made

an assignment of all his property for the benefit of his creditors; that a short time after Edmiston made his assignment, the defendant, Kramer, came from Indiana and demanded of Edmiston's assignees a small lot of hogs, which he alleged, were the tail end bought by Edmiston with his money during the summer and fall of the season; that he had furnished Edmiston with about $17,000 to buy hogs for him; that he charged Edmiston with the money and gave him credit as he received hogs, in Indiana, and that Edmiston owed him about $2,000 for money advanced, and profit; that he had been largely engaged with Edmiston during the previous summer and fall in buying and shipping hogs; that the arrangement between them was that he was to furnish the money, Edmiston to give his labor in buying and shipping the hogs, and they were to divide the profits, which Edmiston, who was present, admitted to be the arrangement, and that the hogs in the pen transferred by Edmiston to his trustee, were the tail end of the hogs bought under said contract. Kramer afterwards left without prosecuting his claim to the hogs; that Kramer bought a lot of hogs of Silas H. Elliott, which were shipped with plaintiffs'; that Elliott had a suit in Indiana against Edmiston and Kramer, to recover the price of his hogs, which Elliott dismissed, and Kramer paid him.

It was agreed between the parties, that if the foregoing state of facts constituted a partnership, and that the plaintiff could recover under the pleadings, that judgment should go for the amount of the note.

A jury was waived, and the case on the aforesaid statement submitted to the court, who gave judgment for the defendant, from which the plaintiff prayed and obtained an appeal to this court.

The errors assigned are, that the judgment of the court is contrary to the law and evidence of the case; and that the court erred in holding that the facts admitted did not in law constitute a partnership.

A. GREEN, for Appellant.

JOHN P. USHER, for Appellees.

CATON, C. J. The evidence, as stated in the agreed case, establishes that Kramer was a partner with Edmiston in the purchase of a large amount of hogs during the season of 1857, but he was not a partner in all of Edmiston's operations in hogs and cattle during that season, and it is impossible to tell from the evidence to what extent the operations of Edmiston were on account of that partnership. We think, however, the evidence

does show satisfactorily, that the hogs purchased of this plaintiff were on account of that partnership.　We may reasonably infer from the evidence, that Kramer was not generally present and participating in the purchase and receipt of the stock, even in those cases where he was interested, but in this case he was present when the hogs were delivered, and assisted in receiving and weighing them.　It is true he did not profess then to be interested in the operation, but Edmiston paid what was paid on the hogs, and gave his note for the balance.　It does not appear that Kramer acted as an ostensible partner in any of their joint operations, but he was a secret partner in all of the operations which were on their joint account.　Where the evidence does show that Kramer was interested, he must be held liable as a partner.　The active part which he took in this operation, we think, does show that it was one of those in which he was interested.　Not only this, but he afterwards claimed a part of these identical hogs, as having been bought with the money which he had furnished Edmiston for the partnership concern.　We are of opinion that the plaintiff was entitled to judgment.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*